Esmond *v.* Van Benschoten.

---

[Saratoga General Term, January 5, 1852. *Willard, Hand* and *Cady,* Justices.]

---

———•◆•———

### Esmond *vs.* Van Benschoten.

Where no place is mentioned for the delivery of a deed, &c. in articles of agreement under seal, for the sale of land, it is competent for the parties subsequently to appoint a place, by parol, for that purpose.

The time of performance of sealed articles of agreement may, on the expiration of the time limited in the articles, be enlarged by parol. Hand, J. dissented.

By extending the time of performance neither party loses the right to insist on the recovery of *liquidated damages.*

Where an agreement stipulated that " on failure to perform the agreements and covenants by the failing party to be performed, he will pay to the

Esmond *v.* Van Benschoten.

other party, for such failure and default, the sum of $500, as his *liquidated damages,*" and where the agreement was not to secure the payment of a less sum of money; and the damages, in the case of a breach, were *uncertain* and *not capable of calculation*, without a resort to evidence, it was held that the sum specified was *liquidated damages* and not a *penalty.* HAND, J. dissented.

Where an agreement declares that the party in default shall pay to the other party a given sum as *liquidated damages*, such sum, *prima facie*, is to be treated as *damages*, and not a *penalty*.

The rules which turn liquidated damages into a penalty, stated and explained.

ON the 26th February, 1850, these parties entered into a contract in writing and under seal, by which the plaintiff agreed that he would, on the first of April thereafter, execute to the defendant an assignment of the lease which Cary Smith and wife had previously assigned to the plaintiff, and all the plaintiff's interest in said premises; and also execute to the defendant a warranty deed of certain premises in Malta, which the plaintiff had purchased of Chase and wife, being about sixteen acres of land; also that he would deliver to the defendant on the premises first described, a ton and a half of hay; also that he would let the defendant have, delivered at Wm. Barber's, at Ketchum's corners, 25 apple trees grafted in the root; also that he would convey to the defendant the undivided half of the grain growing on the plaintiff's land, being about 11 acres, subject to the plaintiff's agreement with Daniel W. Smith. The defendant, on his part, agreed to receive said assignment, conveyance deed, and articles above agreed to be conveyed and delivered, and pay to the plaintiff $2,300, as follows: After deducting from said $2,300 the amount due of principal and interest on two certain mortgages on the 1st of April, 1850, being about $850 principal, the defendant was to pay the balance to the plaintiff and give the plaintiff a bond of indemnity against his liability on said bonds and mortgages. The said parties, each for himself, agreed that on failure on his part to perform the agreements and covenants by him *to be performed, he would pay to the other party for such failure and default, the sum of five hundred dollars, as his liquidated damages.* The complaint alledged, that on the 1st of April, 1850, the time for

Esmond *v.* Van Benschoten.

the delivery of the conveyances therein named, and the payment of the money therein named, was extended by mutual consent to the 2d of April, by an indorsement on said agreement, signed by both parties ; and on the 2d of April, by a like indorsement, was extended to the 6th of April. It then stated that the plaintiff was ready, willing and able to perform on his part, and did to the extent of his ability, and according to the requirements of the said agreement and of the indorsements, perform the said agreement and every part thereof, but that the defendant neglected and refused to perform on his part, and refused to accept or receive the assignment of the said lease and deeds, as he had by said agreement agreed to do ; and neglected and refused to pay the plaintiff, &c. and neglected and refused to give the bond required, &c. The plaintiff thereupon demanded and claimed to recover the $500 liquidated damages, &c.

The answer admitted the agreement and indorsements, extending the time of performance as set up in the complaint. It denied generally and specifically that the plaintiff ever performed, or offered to perform, the said agreement or any part thereof, on his part to be performed, either on the day mentioned in the agreement, or at any other time. It insisted that the several allegations of the complaint were not sufficient to constitute a cause of action, and also that the sum of $500 was a penal sum and not liquidated damages. The reply stated that the agreement was drawn up by Mr. Hulbert, and it was agreed by the parties that he should perform the necessary writings, and that the parties should meet at the day mentioned in the agreement, at his office in Saratoga Springs, to consummate the agreement. That the plaintiff went to the place at the day first appointed, ready and willing to perform, and did in conjunction with his wife execute the requisite writing. Yet the defendant neglected and refused to accept the same, and to perform on his part. And the plaintiff insisted that the $500 was liquidated damages, and not a mere penalty.

The cause was tried before a sole referee on the 22d of November, 1850. It was proved that after the agreement was executed, the parties agreed to leave it with Mr. Hulbert, who

Esmond *v.* Vanbenschoten.

was to prepare the deeds, &c.; and that they would meet at his office in Saratoga Springs, on the 1st day of April, to fulfill the requirements of the contract. The parties met at the time and place aforesaid, and the defendant asked an extension of one day's time to enable him to perform. This was granted, and both parties signed the first indorsement on the original article of agreement. On the second day the parties again appeared, and the defendant not being prepared, asked a further extension until the 6th of April, which was granted; and the parties signed a writing to that effect, indorsed on the original article. Neither of these indorsements was under seal. On the 6th of April, the day to which the time was last extended, the plaintiff appeared and produced all the instruments in writing which he was to give, duly executed and acknowledged, and offered to perform on his part. The defendant did not appear. The plaintiff left the writings with Mr. Hulbert, who appeared to have been the agent of both parties, to deliver to the defendant on his performing on his part. The defendant not appearing on the day, Mr. Hulbert called on him a day or two after, and informed him that the writings were ready on the part of the plaintiff; to which the defendant replied, that he, the defendant, could not perform; that he would go and see the plaintiff, for the purpose of settling with him for not performing. It was further shown on the part of the plaintiff, that he was in a condition to perform on the 1st of April, and until and including the 6th of April, if the defendant had been able and willing to perform on his part. The referee decided that the sum mentioned in the conclusion of the executory contract was not a penalty, but was liquidated damages; and he accordingly reported that sum in favor of the plaintiff. The defendant appealed from the judgment entered on the report of the referee.

*A. Bockes,* for the plaintiff.

*Root & Thayer,* for the defendant.

WILLARD, P. J. As the articles of agreement did not specify the place at which the conveyances to be executed by the plaintiff should be tendered, it was competent for the parties, subsequently, to appoint a place by parol, for that purpose. (*Franchot* v. *Leach*, 5 *Cowen*, 506.) This was done accordingly ; and the plaintiff was ready and offered to perform at that place, but the defendant did not appear.

Although the articles of agreement were under seal, it was competent, nevertheless, for the parties, on the expiration of the contract, to enlarge the time for performance by parol. This was not an alteration of the original contract. In *Fleming* v. *Gilbert*, (3 *John.* 528,) the time for the performance of the condition of a bond had been enlarged by a parol agreement of the parties, and it was held, that evidence of such fact was admissible on the part of the defendant, who was sued for not performing at the day mentioned in the bond. This doctrine was approved in *The Mayor of New-York* v. *Butler*, (1 *Barb. S. C. Rep.* 327.)

This extension of the time was, in the present case, made at the instance, and for the benefit of the defendant. In *Hasbrouck* v. *Tappen*, (15 *John.* 200,) a case in some respects similar to the present, it was held, that a parol enlargement of the time of the performance of an agreement by the vendor did not revive his right to recover a sum which was fixed and liquidated by the agreement, as the amount of damages to be paid by the party failing in performance. As remarked by Sutherland, J. in *Dearborn* v. *Cross*, (7 *Cowen*, 48, 50,) the enlargement of the time is nothing more than a waiver of strict performance. The defendant having solicited the delay, can not urge it as a defense. This would be to convert an indulgence yielded to his solicitation, into a weapon. And the law does not, any more than religion, justify a return of evil for good, or of ingratitude for benefits.

The important question in the case is, whether the sum of five hundred dollars mentioned in the contract, was merely a penalty to secure the performance of the agreement, as the defendant

contends, or the damages liquidated by the parties, as claimed by the plaintiff.

Much of the embarrassment experienced in the discussion of questions of this kind, arises from not discriminating properly between contracts having a similitude to each other, but which are materially different. *First.* The agreement may be to do or refrain from doing some particular act, or in default thereof to pay a given sum of money. This agreement was well known to the civil law. (*Inst. lib.* 3, *tit.* 16, § 7.) This is not a penal, but more properly, an alternative obligation. The case of *Slosson* v. *Beadle*, (7 *John.* 72,) and *Pearson* v. *Williams*, (24 *Wend.* 244,) are examples of this contract. *Second.* The agreement may assume the technical form of a bond containing a given penalty, conditioned to become void on the payment of a less sum, or the performance of some particular act. Here there is no express promise to do any thing, except what is implied from the condition, and that is sanctioned by the penalty. *Third.* The agreement may bind the party absolutely to do or refrain from doing the particular act, and then proceed to declare that if the promise is not performed, the party stipulating shall pay a given sum of money as a *penalty.* And lastly, the agreement may in all respects resemble the last, except that the fixed sum may be declared payable as liquidated or stated damages, or as a forfeiture. (*Sedg. on Dam.* 419.)

In case the agreement assumes the form of a bond, or the sum reserved is denominated a penalty, the *prima facie* presumption is that the larger sum is intended merely as security, and not as liquidated damages. On the contrary, if the sum specified be declared affirmatively to be *liquidated* damages, and negatively also, that it should not be considered as a penalty or in the nature of a penalty, although the inference is that the parties meant what they expressed, yet there are certain rules of law which may control the meaning, and convert the sum so mentioned into a penalty.

A brief reference to a few of the cases, will show the propriety of the foregoing distinctions. Thus, in *Astley* v. *Weldon*, (2 *B. & P.* 346,) an agreement was entered into by the defend-

Esmond *v.* Van Benschoten.

ant to perform for the plaintiff at his theater, and attend all rehearsals, or pay the established fines for all forfeitures of any kind whatever, with a clause that either of the parties neglecting to perform the agreement should pay to the other £200. On the trial, a verdict was had for the plaintiff for £20, with leave to the plaintiff to enter a verdict for £200, if the court should consider the agreement one in the nature of *liquidated damages.* Here it will be noticed that the phrase *liquidated damages,* was not used at all, and that if the sum of £200 was not construed as a penalty merely, the non-payment of any one of the fines would have forfeited the whole amount. Lord Eldon remarked, " that when there is a doubt whether the sum inserted be intended as a penalty or not, if a certain damage less than that sum is made payable upon the face of the instrument, in case the act intended to be prohibited be done, that sum shall be construed to be a penalty, though the mere fact of the sum being apparently enormous and excessive, would not prevent it from being considered as liquidated damages."

The case of *Astley* v. *Weldon,* was followed in *Kemble* v. *Farren,* (6 *Bing.* 141.) In the last mentioned case, the defendant had agreed with the plaintiff to act as principal comedian, at Covent Garden, and to conform to its rules ; the plaintiff was to pay £3. 6s. 8d. every night that the theater should be open, and the agreement contained a clause that if either party failed to fulfill his agreement, or any part thereof, or any stipulation therein contained, each party should pay the other the sum of £1000, to which sum it was agreed that the damages should amount, and which sum was declared by the parties to be *liquidated and ascertained damages, and not a penalty or penal sum, or in the nature thereof.* The breach alledged, was a refusal to act during the second season, and the jury gave a verdict for £750. A motion was made to increase this verdict to £1000, on the ground that that sum was the amount liquidated by the parties, but it was denied. Lord Tindal, Ch. J., in delivering the judgment of the court, said that it was difficult to suppose any words more precise or explicit than those used in the agreement. And if the clause had been limited *to breaches which were of an uncertain nature*

*and amount,* the court would have thought it would have had the effect of ascertaining the damages upon any such breach at £1000. " For," he observed, " we see nothing illegal or unreasonable in the parties, by their mutual agreement, settling the amount of damages uncertain in their nature, at any sum upon which they may agree. In many cases such an agreement fixes that which is almost impossible to be accurately ascertained, and in all cases, it saves the expense and difficulty of bringing witnesses to that point. But in the present case, the clause is not so confined. It extends to the breach of any stipulation by either party. If, therefore, on the one hand, the plaintiff had neglected to make a single payment of £3. 6s..8d. per day, or on the other, the defendant had refused to conform to any usual regulation of the theater, however minute and unimportant, it would under the clause in question, in either case, have given the stipulated damages of £1000. But that a very large sum should become immediately payable in consequence of the non-payment of a very small sum, and that the former should not be considered the penalty, appears to be a contradiction in terms; the case being precisely that in which courts of equity have always relieved, and against which courts of law have, in modern times, endeavored to relieve, by directing juries to assess the real damages sustained by the breach of the agreement."

It is well settled that no damages can ever be so liquidated between the parties for the mere non-payment of money, as to evade the provisions of law which fix the rate of interest. (*Orr* v. *Churchill,* 1 *H. Black.* 232. *Gray* v. *Crosby,* 18 *John.* 219.)

The courts in this state have inclined to treat a fixed sum as a penalty, and to permit the real damages to be inquired into when the sum fixed was greatly disproportionate to the presumed actual damage. That was the ground on which *Dennis* v. *Cummins,* (3 *John. Cases,* 297,) seems to have been decided. There was room in that case to presume that by the term damages, the parties intended a penalty merely.

In *Knapp* v. *Maltby,* (13 *Wend.* 587,) the defendant covenanted to assign to the plaintiff a lease, and to deliver possession thereof, with the following provision : " And I further covenant

that, in case of non-performance of any, or either of the above covenants, I will forfeit the sum of five hundred dollars as the liquidated damages to the said Knapp." The court held it to be a clear case of liquidated damages.

It is difficult, and perhaps, impossible, to establish a general rule on this subject, that will be free from every objection. In general it may be said, that when the sum specified in the contract is described by the parties as liquidated damages, and is not to secure the payment of a less sum of money, nor the performance of an act, or the failure to perform, in which the damages for a breach of the contract will be certain, the language will be deemed expressive of the intent of the parties, and the specified sum will not be treated as a penalty. The cases of *Dakin* v. *Williams*, (17 *Wend.* 447,) and *S. C. in error*, (22 *Id.* 201,) and *Pearson* v. *Williams*, (24 *Id.* 246, and *S. C. in error*, 26 *Id.* 630,) were decided upon this ground. Most of the English cases, as well as those of our own courts, are reviewed in the preceding, and it can not be necessary to go over them again.

In the present case, although there were several things to be done on the part of the plaintiff, and two things on the part of the defendant, yet the stipulated sum of five hundred dollars was required to be paid for "*a failure to perform the agreements and covenants by the failing party to be performed.*" A mere technical breach, in a single particular, did not, as in some of the cases, work a forfeiture of the whole sum. The sum became due only on a total failure to perform. This sum, too, is not denominated a penalty, but is described as the *liquidated damages* of the party injured by the breach of the contract. These damages were in their nature uncertain, and not capable of calculation without a resort to evidence. They were less certain than in *Knapp* v. *Maltby*, (*supra*,) which the court held to be a clear case of liquidated damages. The covenant was not to secure the payment of a less sum of money, but a much larger sum, and something else, and there is no apparent or oppressive disproportion between the probable damage and the sum agreed upon. The parties were the best judges of the

measure of compensation which should be allowed for a breach of the covenants. They have expressed themselves in clear and unambiguous language, and no rule of law will be violated if they are held to their bargain. It is no part of the duty of the court, in cases like the present, to aid one of the parties in defeating the just expectation which the terms of the contract was calculated to excite.

This case, too, differs from *Jackson* v. *Baker*, (2 *Ed. Ch. R.* 471.) There the parties agreed to *forfeit* and pay, &c. for any violation of the agreement, or any part thereof, &c. five thousand dollars. The words *forfeit and pay* are the operative words in *Dennis* v. *Cummins*, (3 *John. Cas.* 297. The word *forfeit* is an appropriate expression to denote a penalty, and when used in such contracts, increases the presumption that the parties merely intended to secure the performance of the agreement by a penalty. In the present case, no words indicating a penalty are used, and the sum specified is expressly denominated liquidated damages.

The judgment of the referee must be affirmed.

CADY, J. concurred.

HAND, J. I regret to be constrained to dissent from the views of my brethren in this case. I think the report erroneous upon two grounds: first, non-performance of the contract by the plaintiff; secondly, it was not a case of liquidated damages.

The familiar rule is, that as between the parties no evidence, oral or written, not under seal, can be admitted to discharge, contradict or vary a contract by deed. *Unum quodque ligamen dissolvitur eodem ligamine quod ligatur.* This rule is found in some of the earliest English reports, and has been acted upon there from the earliest periods; and I think is clearly the law in this state. (*Blannerhasset* v. *Pierson*, 3 *Lev.* 234 *Snow* v. *Franklin*, 1 *Lutw.* 358. *Blake's case*, 6 *Coke*, 44 *a. Allen* v. *Blague*, *Cro. Jac.* 99. *Thompson* v. *Brower*, 7 *Taunt.* 656. *Heard* v. *Wadham*, 1 *East*, 629. *Doe* v. *Gladdin*, 6 *Ad. & E. N. S.* 962. *Littlor* v. *Holland*, 3 *T. R.* 590. *Brad-*

*dick* v. *Thompson*, 8 *East*, 344. *Blackway* v. *Edwards*, 10 *A. & E*. 21. *Harris* v. *Goodman*, 2 *M. & G*. 405. *West* v. *Blackway*. 2 *Id*. 929. *Preston* v. *Merceau*, 2 *Bl. Rep*. 1250. *Pearson* v. *Henry*, 6 *T. R*. 6. *Leslie* v. *De La Tour*, 12 *East*, 583. *Platt on Cov*. 591, 595. 2 *Saund. R*. 47, *dd. n*. 1. *Id*. 288, *notes, ed*. 1846. 3 *Stark. Ev*. 1002. 1 *Phil. Ev*. 752, 776. *Mitchell* v. *Hawley*, 4 *Denio*, 417. *Nelson* v. *Sharp*, 4 *Hill*, 584. *Eddy* v. *Graves*, 23 *Wend*. 82. *Allen* v. *Jaquish*, 21 *Id*. 628. *Delacroix* v. *Bulkley*, 13 *Id*. 71. *Suydam* v. *Jones*, 10 *Id*. 180. *Blood* v. *Goodrich*, 9 *Id*. 78. *Philips* v. *Rose*, 8 *John*. 392. *Freeman* v. *Adams*, 9 *Id*. 115. 1 *Greenl. Ev*. § 302.) And the better opinion seems to be, that even an accord and satisfaction before breach, is insufficient; though otherwise after breach. (*See Reporter's note to May* v. *Taylor*, 6 *M. & G*. 262; *Notes to* 1 *Smith's Lead. Cas*. 327.) I am aware that there are some *dicta*, that the time for the performance of a sealed contract may be extended by parol. But whatever may have been said in a few cases in this state, there can be but little doubt as to the law now. And in no case, I believe, has the plaintiff recovered upon the sealed contract, after such extension, where he had not fulfilled the original contract. The parties may mutually abandon the contract, and neither perform, or both depart from it and execute another contract in relation to the same subject matter ; and they may have mutual rights under the new contract, expressed or implied. I will notice a few cases which seem to, but in truth do not, repudiate the old rule. *Bellinger* v. *Kitts*, (6 *Barb*. 274,) was a bill filed to enforce a specific performance, and does not affect the question. *Smith* v. *Gugerty*, (4 *Barb*. 614,) was not on a specialty, but was assumpsit; and besides, there had been mutual deviations, and the builder had been suffered to continue the erection for the benefit of the other party, after the time. (*And see Jewell* v. *Schroeppel*, 4 *Cowen*, 564.) *The Mayor of New-York* v. *Butler*, (1 *Barb. S. C. Rep*. 325,) was similar ; and there had been a mutual deviation in performing the work. Neither of these cases, as I understand the reports, was upon a specialty. *Dearborn* v. *Cross* was on a note given for the purchase money of real estate, for

Esmond *v.* Van Benschoten.

the conveyance of which the payor held a bond, and the court held that the defendant could show that the property for which it was given had, by mutual agreement, been taken back by the payee, although the bond had not been given up and cancelled. The payor could not have enforced the bond, for he had not performed, and a different arrangement had been executed, which in truth satisfied the claim ; and besides, the suit was not on a specialty. (7 *Cowen*, 48.) *Strang* v. *Holmes*, (*Id.* 224,) was an accord and satisfaction after breach. In *Hasbrouck* v. *Tappen*, 15 *John.* 200,) which was covenant for not conveying land which was to be surveyed, the defendant set up in defense that the plaintiff had consented to postpone the survey, and so had waived the time of performance by parol, and consequently his right to damages ; but the plaintiff recovered. It is said this case is an authority that the time of performance specified in a sealed instrument, may be waived by parol. But it seems to me that it shows such pretended waiver is entirely nugatory. The plaintiff was in no default whatever, and his parol assent to delay the survey did not affect the covenant at all. It was merely void, and in law no waiver or alteration of the contract. Indeed the cases are illustrations of the rule of evidence to which I have referred, and in no way opposed to it. The remark therefore of the judge who delivered the opinion of the court, that mere extension of time is not a waiver of any thing, was wholly *obiter.* No authority is cited by him except *Evans* v. *Thompson*, (5 *East*, 193.) I find no such language in that case, nor was any such point made there ; nor does the report of it show that the memoranda extending the time there, were not under seal. It was simply a question of construction of the papers ; and on a matter of the practice of the court merely ; and even in that particular is directly opposed to *Jenkins* v. *Law*, (8 *T. R.* 87.) *Lattimore* v. *Harsen*, (14 *John.* 330,) would seem on a cursory reading to be adverse to this general rule. Mr. Justice Cowen, in *Allen* v. *Jaquish*, doubted this case, and *Dearborn* v. *Cross*, but was not certain but they might be sustained on the ground of an executed contract of rescission. I have remarked upon the latter, and I think the former was correctly decided.

Probably the sealed contract was still subsisting. That was between the plaintiffs and defendant and Jacob Harsen; and after part performance the plaintiff declined further performance, and then the plaintiffs and the defendant (Cornelius) made a parol contract, under which the work for which the suit was brought was done. They had refused to perform the sealed contract, and were probably still liable to pay the stipulated penalty; but had completed the same work under the new agreement between different parties. _Fleming_ v. _Gilbert_ is perhaps the most prominent case supposed to support the innovation. (3 _John._ 526.) It is cited in the cases in Barbour, and in several others. The suit was on the bond of the defendant to procure and deliver to the plaintiff and discharge of record, a bond and mortgage of the plaintiff. The defendant offered to show that he did procure the bond and mortgage and offer them to the plaintiff, and offered to do whatever the plaintiff should require for their further discharge, and deposit them where the latter directed; and that afterwards, by an agreement between all the parties, the bond and mortgage were satisfied. If this was so, there was a substantial performance, and a literal one was prevented by the parties entering into the other arrangement. _Ratcliff_ v. _Pemberton_, (1 _Esp._ 35,) and _Thresh_ v. _Rake_, (_Id._ 53,) were nisi prius cases, and the remarks of the court in the first were wholly _obiter_; and the other was an action on the case: and if they maintain a different rule from that I have stated, have since been overruled again and again. And it should be borne in mind that our supreme court, since the cases of _Fleming_ v. _Gilbert, Lattimore_ v. _Harsen_, and _Hasbrouck_ v. _Tappen_, have frequently recognized this rule, that a mere subsequent agreement, not under seal, can not contradict, alter or discharge a sealed agreement. (_See Eddy_ v. _Graves, Allen_ v. _Jaquish, Mitchell_ v. _Hawley, Suydam_ v. _Jones, Delacroix_ v. _Bulkley, supra._) In many of the English cases the rule has been enforced, although its operation was very severe. In _Blackbury_ v. _Edwards_, (10 _A. & E._ 21,) in debt on bond, a plea setting up a parol agreement, that in consideration the defendant would dissolve a certain copartnership, the plaintiff would forbear all further proceedings,

and that the defendant had performed, was held frivolous, and the plaintiff signed judgment as for want of a plea.

In *Harris* v. *Goodman*, (*supra*,) the defendant was induced to take letters of administration on the promise of the plaintiff, that he would not prosecute. In *May* v. *Blakeney*, (*supra*,) the plaintiff had a judgment *non obstante veredicto* against the defendants for removing erections, contrary to a covenant, although they had been erected under an express license in writing, to erect and remove them. This case was decided in 1841, and was elaborately argued. And in *Doe* v. *Gladwin*, (6 *A. & E. N. S.* 962,) decided in 1844, the tenant lost her land because she had neglected to insure in the names of lessor and lessee, although she had insured in the name of the lessor and shown this policy to the lessee, who approved of it, and afterwards accepted rent. The court considered the action "unusually harsh," but said that "no case has gone the length of intimating that a breach of covenant can be justified by a parol license to break it. This would be to confound well established legal principles." Where there is an executory contract for the delivery of property, a refusal by the vendee to receive it, in many cases, is sufficient. (*Cort* v. *Ambergate*, &c. *Railway Co.* 15 *Jur.* 877; *S. C.* 6 *Eng. L. and Eq. Rep.* 230.) But that is not this case.

It is not easy to discover upon what principle the plaintiff can say, the extension of time for performance would not be an alteration of the contract. But as we have seen, it did not extend the time in this case, for the indorsements were merely inoperative and void for that purpose. The result was, that neither performed, nor offered to perform the covenant, and both lost all claim to damages by that default. It is said the defendant admits he did not perform, and that is so, and of course he has no cause of action. But he denies performance by the plaintiff, and the latter did not perform, or offer to perform, according to the terms of the covenant; and he is, therefore, also in default, and can not sue. There is no proof that the plaintiff offered to perform on the 1st of April. Indeed he has hardly so alledged. Hulbert heard him say on the 2d, he was

ready to perform.. That is not sufficient, unless the other party refuses to accept ; and besides, it was too late. Had the plaintiff taken steps to make the defendant liable, *non constat* but he would have performed. But he preferred to avail himself of a mutual dispensation, the importance of which, to him, as well as to the defendant, is their own business.

But again ; admitting the indorsements are valid, they include nothing but the delivery of the conveyances and the payment of the money. Nothing is said about the trees and the hay ; nor is there any proof of performance, or an offer to perform, as to those things. The indorsements are in writing, and can not be enlarged by parol. The plaintiff must fulfill before he takes $500 from the other contracting party. The mere existence of hay or trees belonging to the plaintiff, or that might have been procured, sufficient to fulfill their part of the contract, was not performance or tender of performance.

Nor do I agree with the learned referee on the question of damages : I understand the rule to be, that where the instrument contains covenants for the performance of several things, particularly if of various degrees of importance, and a large sum is stated at the end, to be paid on a breach of performance, it is a penalty ; though it may be different in some cases. where a sum is fixed as damages for the performance or omission of a specified act. This rule is settled by the overwhelming number and authority of the decisions. (*Reporter's note,* 1 *Holt's N. P. R.* 45. *Astley* v. *Weldon,* 2 *B. & P.* 346. *Kemble* v. *Farren,* 6 *Bing.* 141. *Dakin* v. *Williams,* 17 *Wend.* 455. *S. C.* 22 *Id.* 261. *Jackson* v. *Baker,* 2 *Edw. Ch. Rep.* 471. *Davies* v. *Penton,* 6 *B. & C.* 216. *Boys* v. *Ancell,* 5 *Bing. N. C.* 390. *Horner* v. *Flintoff,* 9 *M. & W.* 678. *Price* v. *Green,* 16 *Id.* 354. *Breckhan* v. *Drake,* 8 *Id.* 846. 9 *Paige,* 106. *Chit. on Con.* 758, 761. 1 *Saund. Rep.* 58, *n.* 1, *n. d,* *ed.* 1846.) And, perhaps, the rule may be qualified as laid down by Bayley, J. in *Davies* v. *Penton,* and reaffirmed in *Horner* v. *Flintoff.* That " where the sum which is to be a security for the performance of an agreement to do several acts, will, in case of breaches of the agreement be, in some instances,

too large, and in others too small, a compensation for the injury thereby occasioned, that sum is to be considered a penalty." The case under consideration is precisely of that character.

But the respondent's counsel insists that the rule does not apply here, because the contract does not state that the damages are to be paid on the failure to perform " either" of the agreements and covenants. That I think brings the case more clearly, if possible, within the rule. In *Knapp* v. *Maltby*, (13 *Wend.* 587,) it was stipulated that $500 should be the liquidated damages for non-performance of " any or either" of the covenants. However, similar words were used in *Kemble* v. *Farren*, and the decision followed that of *Astley* v. *Weldon*. In this last case the contract was for the services of the defendant for a term of years, and under certain stipulations, and it was agreed that if " either of them neglected to perform that agreement according to the tenor and effect and true intent and meaning thereof," he should pay £200 ; and this was held to be a penalty. The covenant in *Knapp* v. *Maltby*, was, in substance, to perform a single act, convey and deliver possession. And Mr. Justice Sutherland cites 5 *Cowen*, 144, and 7 *Id.* 307, neither of which conflict with the law as laid down by Mr. Justice Heath in *Astley* v. *Weldon*. And in *Pearson* v. *Williams*, (24 *Wend.* 244,) the stipulated sum was considered as a part of the contract price.

In the case now before us, one party was to do six things— make two conveyances, one assignment, and transfer the hay, grain and trees—certainly of various degrees of importance. The other, two—pay money and give a bond. If it is a case of liquidated damages, failure to deliver one and a half tons of hay, or any part of it, or one tree, would have made the plaintiff liable for $500 ; for it will hardly be contended that the damages are liquidated as against the defendant, and not as against the plaintiff. Ordinarily the damages on an agreement to purchase are merely nominal. And if uncertainty as to nature and amount is to be the criterion, as hinted by the chancellor in *Williams* v. *Dakin*, there is no such difficulty in this case.

Possibly the plaintiff can compel specific performance, but he can not recover damages upon any implied agreement arising from the indorsements.

Judgment affirmed.

[SARATOGA GENERAL TERM, January 5, 1852. *Willard, Hand* and *Cady*, Justices.]