## Case No. 11,017a.

### PERU v. The NORTH AMERICA.

[21 Betts, D. C. MS. 98.]

District Court, S. D. New York. 1853.

ADMIRALTY — WHAT SUFFICIENT TO HOLD RES TO BAIL — AGREEMENT FOR LIQUIDATED DAMAGES— BAIL FOR LESS THAN DOUBLE THE AMOUNT OF LIBELLANT'S DEMAND.

[1. A libel in rem for breach of charter party demanding a stated sum in damages is sufficient to hold the res to bail, although specific breaches showing specific amounts of damage are not alleged.]

[2. An agreement fixing the amount of penalty or liquidated damages is not conclusive upon a court of admiralty as to the amount of bail in a suit in rem.]

[3. Act March 3, 1847 (9 Stat. 181), does not abridge the power of a court of admiralty in a suit in rem to accept bail for less than double the amount of libellant's demand.]

[This was a libel for breach of charter party by the government of Peru against the ship North America (Cornell and others, claimants). Heard on claimants' motion for a discharge upon giving bail for $40,000.]

BETTS, District Judge. The ship North America was chartered to the libellants, by charter party dated New York, August 17, 1853 (Qu. 1852), to transport a cargo of gua-no from the Chinca Islands to Hampton Roads. The charter party stipulated that the ship should proceed from San Francisco to Callao, and thence, with all convenient dispatch, to the Chinca Islands, and to be at Callao, for the purpose of fulfilling the voyage, in the course of January or February, 1853, or before. The particulars of loading and unloading, and conducting the voyage, were regulated by the charter party, and it then added. "Penalty for nonperformance of this charter party $20,000, which amount is fixed as indemnification of prejudices caused by the party delinquent to the party observant."

The libellants instituted their action in rem in this court, and caused the ship to be attached, on the allegation that "the agreement of the charter party was not fulfilled, nor any way entered upon, on the part of the ship, but, on the contrary, the said vessel openly and wantonly violated the said charter party, by proceeding on another and in a different voyage, under another and a different contract of affreightment from that of the aforesaid charter party," and charge that they "have sustained damage, in consequence of the nonperformance of the aforesaid contract of charter party, to an amount greatly exceeding the sum of $20,000, fixed by the parties in and by the said charter party as indemnification for such damages; that is to say, to the amount of $50,000 and upwards."

The claimants now move the court for an order that the ship be discharged from arrest on giving bail to double the amount stipulated in the charter party, and for such other modification in point of amount.

By the act of congress of March 3, 1847 (9 Stat. 181), the marshal cannot accept bail, and discharge the ship from arrest, unless the bond be in double the amount claimed by the libellant, with sufficient surety, to be approved by the judge. This statute does not assume to interfere with the powers of a court of admiralty to regulate the execution of its process, and the stipulations it is authorized to take, conformable to general principles of procedure in those courts, on the particular equities of each case.

The motion is founded upon two propositions: First, that the stipulation in the charter party amounts in law to a liquidation of the damages which the libellants can demand for any breach of the charter party; and, second, if that stipulation is construed to be a penalty, in its technical sense, the libel has not assigned breaches in a proper form of pleading, so as to put in demand any specific sum of money, which can be the basis of bail, or sufficient to afford authority to the court to decree damages. The latter proposition is properly a point of pleading, and the insufficiencies of the libel, if any, suggested by the counsel for the claimants, are not so flagrant or obvious that the court can decree against it, as a nullity, on a summary

motion. The assignment of breaches or exactness of pleading attended with the formalities enforced by the rules of the common law are not demanded in the admiralty practice; and if, on consideration, the statement of damages in this libel should be held too indefinite or indistinct, it would be almost a matter of course to permit the party to reform it in its details, if he did not depart virtually from the substance of the pleading. I shall therefore assume that the libellants place themselves, by their proceedings, in an attitude to be entitled to all the damages they can prove they have sustained because of the charter party, unless the amount is limited, determined by the agreement itself.

As to the first point, whether the agreement naming an amount of damages is to be construed a penalty or an adjustment and liquidation of the sum to be paid at all events, the question is not so free of doubt as to be disposed of satisfactorily, impromptu. Although the books seem more generally to regard the use of the term "liquidated damages" as less certain, in determining the intent of the contracting parties to fix the quantum of damages, than employing "penalty" is to denote they meant the question of damages should be an open one, yet it may perhaps be assumed that the bearing of the course of modern decisions is to put the interpretation of the stipulation upon the intention of the parties, to be gathered from the whole agreement, and not as absolutely settled by the use of either of those expressions; and courts of high respectability indicate the opinion that the presumption, in case of doubt, will be that the stipulated sum was intended as a penalty, and not to be liquidated damages. Lindsay v. Anesley, 6 Ired. 186; Watt's Ex'rs v. Sheppard, 2 Ala. 425; Brewster v. Edgerly, 13 N. H. 275; Cheddick v. Marsh, 21 N. J. Law, 463; Jackson v. Baker, 2 Edw. Ch. 473; Spear v. Smith, 1 Denio, 464.

A learned and acute commentator seems to consider the disposition of the American courts to favor a construction of these stipulations which takes from them a positive character, and renders them penalties, as not consonant with the soundest judicial prudence. Sedg. Dam. (2d Ed.) 421. See, also, Esmond v. Van Benschoten, 12 Barb. 366. I think, however, the reasoning in support of the opposite view has great legal urgency and weight. I do not think the court is required, on a motion of this character, to declare, in a case of ambiguity, a legal proposition which may bar the rights of the libellants, and particularly against the manifest inclination of the state judicatories, when, by giving the more liberal intendment to the agreement, the point is left open for decision upon the merits, and in a way that the aggrieved party can have redress by appeal to the highest tribunals. A determination on this motion that under the charter party the libellants can recover no more than $20,-000 damages, whatever their real amount may be, would be conclusive probably upon the remedy, because, on giving security for that sum, the ship might be effectually put out of the reach of the libellants, although a court of review should, after final decision here, overrule the judgment, and determine that the ship ought to have been retained to answer to the actual damages sustained.

I shall accordingly deny the motion to discharge the ship on giving bail in the sum of $40,000, but I consider the amount claimed by the libel, the extent to which stipulations for the delivery of the vessel ought to be bound, according to the course of admiralty courts. The recovery cannot, in a money demand, be beyond that sum, and security for its payment is all that the libellants are entitled, in equity, to demand. The stipulation is not for the value of the ship, but to cover the amount in contestation. Dist. Ct. Adm. Rules 39, 40.

The ordinary stipulation on intervening is intended to cover such costs as may be awarded. The order will accordingly be that the ship be discharged on a sufficient bond or stipulation executed by the claimants in the sum of $50,000.