## MACFARLANE et al. v. WARDMAN REAL ESTATE INV. CORPORATION.

### No. 6217.

United States Court of Appeals for the District of Columbia.

Argued Nov. 8, 1934.

Decided Dec. 3, 1934.

James B. Archer and Charles F. Sanford, both of Washington, D. C., for appellants.

George C. Ober, Jr., of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and HITZ, Associate Justices.

VAN ORSDEL, Associate Justice.

The Wardman Real Estate Investment Corporation brought suit in the Supreme Court of the District of Columbia against appellants, defendants below, to recover a balance alleged to be due upon a promissory note executed the 28th day of April, 1928, payable to the order of Harry Wardman and Thomas P. Bones, in the sum of $3,150, which was secured by a second deed of trust on lot 110 in square 3198 in this city.

The note represented the unpaid portion of the purchase price of the lot and improvements thereon, and had been indorsed to the plaintiff company shortly after its execution. Plaintiffs allege that because of default in the payment of monthly installments on the note the premises were sold on June 21, 1933, in accordance with the terms of the deed of trust. The proceeds of the sale were applied to the payment of the expenses of the sale, interest due, and the balance, amounting to $492.23, was applied on the principal of the note, leaving a balance due of $1,267.99, for which this suit was brought to secure a deficiency judgment.

Defendants filed pleas to the declaration in which they admitted the execution and delivery of the note sued upon and the deed of trust, alleging that the trustees, under the deed of trust, were not selected by the respective parties but were nominated by Harry Wardman and Thomas P. Bones and the plaintiff Wardman Real Estate Investment Corporation, and that Hobbs and Burns, the trustees, were the employees of the plaintiff

corporation at all times during the transactions here involved.

Defendants further allege that on the 28th of May, 1933, a balance remained unpaid on said note of $1,760.92, and that defendants notified and informed one Henry J. Robb, an agent and employee of the plaintiff corporation, that they desired to surrender to the plaintiff the "possession of the said premises aforesaid and the keys thereof, in accord and satisfaction of their, the said defendants', debt aforesaid."

Defendants then allege that Robb took possession of the premises and proceeded to exercise dominion over and convert the same to the use of the plaintiff corporation, and on the 1st day of June, 1933, two days after the delivery of possession, Robb, as agent of plaintiff corporation, leased the premises to one Ervin, together with an option to purchase the property; the lease and option being in writing. Following the leasing of the premises it is alleged that Hobbs and Burns, trustees under the deed of trust, advertised the premises for sale at auction, at the auction room of the auctioneer, and a deposit of $500 was required to be made by the purchaser. The sale was thus conducted, "not in front of the said premises, not after placarding, flagging, or belling the same, as was then and there the usage and custom, but in an auction room, without exhibition or view of the said premises"; and on the 22d day of June, 1933, at the auction room Hobbs and Burns, the alleged trustees, caused the premises to be sold, without requiring any deposit, to Henry J. Robb, as agent for the plaintiff, no other bidders being present, for the sum of $750, to whom a trustees' deed was executed, and who thereafter, as a part of the transaction, conveyed and transferred the property to the plaintiff corporation.

The defendants further allege by way of plea, "that by the means aforesaid, the plaintiff, to wit, on the 1st day of June 1933, as aforesaid, elected to be and became the mortgagee of the premises aforesaid, in possession, and by mesne conveyances has become seized and possessed of the said premises in fee simple in its demesne; in accord and satisfaction of the defendants' debt aforesaid, and in abatement thereof." The court sustained a motion to strike the pleas, and defendants refusing to further plead, judgment was entered for plaintiff, from which this appeal was prosecuted.

■ While the legality of the sale is attacked in defendants' plea, defendants have elected to rest their case upon accord and satisfaction. By the motion to strike the plea, its averments are admitted to be true. We have, therefore, to consider the effect of an executed oral contract, under which the plaintiff, through its agent, agreed, in consideration of the return of the possession of the premises, to relieve the defendants of any further liability upon the note. In other words, to accept the surrender of the property and possession as an accord and satisfaction of the balance due upon the note.

■■ At common law, accord and satisfaction of a debt, evidenced by a mortgage under seal, could only be accomplished by a written instrument of equal dignity under seal, but the mortgage was the sole evidence of debt and was not given to secure a note as is customary in this country. Here the note, not under seal, is the primary evidence of the indebtedness. The common-law rule, however, has been largely abrogated by the decisions of the courts in the various states of the Union, and it is settled by the trend of modern decisions that a mortgage debt may be satisfied by a surrender of the equity of redemption in accord and satisfaction of the balance due on the mortgage debt. The same rule applies in respect of the obligations imposed by a contract under seal. In Tallman v. Earle (Com. Pl.) 13 N. Y. S. 805, 806, the court, considering whether the payment of a part of the rental due and the surrender of possession of the premises operated as accord and satisfaction of the stipulations of an unexpired lease under seal, said: "We concede at once that the rule for which the respondent contends was a settled principle of the common law (Blake's Case, 6 Coke, 43b; Berwick v. Oswald, 1 El. & Bl. 295); but in this state the peculiar common-law properties of a specialty have been modified by legislation as respects, for instance, the conclusive effect of a seal, and by adjudication, we maintain, as respects the mode in which the obligation of a sealed instrument may be discharged. At common law a specialty could be dissolved only by an instrument under seal, by the judgment of a court, or by statute; but in this state at least the weight of authority is that it may be discharged, even before breach, by an executed parol agreement between the parties. In Fleming v. Gilbert, 3 Johns. 528, the action was on a bond conditioned that the defendant should produce and deliver up a mortgage at a specified time, and should procure it to be discharged on the records of the county; and it was held that a parol waiver of performance was a valid defense. Langworthy v. Smith, 2 Wend. 587 [20 Am. Dec.

652]; Esmond v. Van Benschoten, 12 Barb. 366; Mayor, etc., v. Butler, 1 Barb. 327."

The circumstances under which a parol agreement is carried out may be of sufficient significance to establish a rescission of the contract, and this may occur at any time while the contract is in force. Its effect is not dependent upon a breach of the contract. In Jenks v. Robertson, 58 N. Y. 621, the court, without considering the common-law rule that a specialty before breach cannot be discharged by a parol executory agreement, held it sufficient "that the circumstances showed an executed rescission of the contract, * * * upon which ground some of the cases go to escape from a harsh and inequitable application of the doctrine of the common law."

On the same principle, where a debtor enters into a new contract with his creditor, by the terms of which the conditions of the original contract are varied and changed, the new contract is a good accord and satisfaction, if so agreed by the parties. It logically follows that accord and satisfaction may be accomplished without formal conveyance, by acts in pais legally equivalent to such a conveyance which consisted in the instant case of accepting the key, taking possession of the property, and leasing the property with an option of sale.

In Lewis et al. v. Donohue et al., 27 Misc. 514, 58 N. Y. S. 319, 320, the action was for unpaid rent upon a written lease under seal. Defendants set up an executed oral agreement whereby the leasors accepted the sum of $75 for a surrender of the lease in full satisfaction of the judgment, and allowed the tenants to occupy the premises free of charge for a certain period. The court, considering whether this amounted to an accord and satisfaction of the obligations of the lease said: "The payment of $75, though less than the amount of the default judgment, coupled with the surrender of the lease, invested the oral agreement with binding legal force. * * * In the case at bar the surrender of the lease and the delivery of possession alone constituted sufficient consideration for the landlord's agreement to discharge the tenant's obligation. Sherman v. Engel, 18 Misc. 484, 41 N. Y. S. 959. * * * There is, however, a further principle which the appellants overlook in attacking the complaint. The oral agreement had become executed, and the landlords, having accepted its benefits, cannot now assail it. It was quite competent for the parties to this lease to abrogate it by an executed parol agreement."

It appears, therefore, by the averments of defendants' plea, that the plaintiff corporation, through its agents, under a parol agreement, accepted the keys, took possession of the premises, and leased it with an option of purchase to the lessee. If these facts, and the averments setting forth the executed parol agreement in accord and satisfaction of the debt, are supported by sufficient evidence, it constitutes a complete defense to this action.

The judgment is reversed, with costs.