## PEARSON vs. WILLIAMS' ADMINISTRATORS.

Where a party, in consideration of another having conveyed to him 14 city lots for *only* $21,000 *covenanted* that he would by a certain day erect two brick houses of specified dimensions, *or*, in default thereof, pay to the grantor *on demand*, after the specified day, the sum of $4000 : *it was held*, that the sum specified was not a *penalty*, that it should be deemed part of the *contract price* of the lots, and that on failure to erect the houses, the *covenantee* was entitled to recover the specified sum, and should not be limited merely to *damages* for the non-erection of the buildings.

[ *245 ]     *ERROR from the superior court of the city of New-York. The administrators of Williams sued Pearson in the court below, and on the trial gave in evidence a *covenant* in the following words : " In consideration that Cornelius Tiebout Williams, for the consideration of twenty-one thousand dollars *only*, has by deed of this date conveyed to Isaac Green Pearson *fourteen* lots of land in the twelfth ward of the city of New-York, to wit, seven on the northeasterly side of Sixteenth-street, and seven on the southwesterly side of Seventeenth-street, containing, when taken together, in each of those streets, one hundred and seventy-five feet front, and distant one hundred and twenty-five feet east of Union square place, and one hundred and twenty-five feet west of Irving place : Now therefore, the said Isaac Green Pearson doth hereby *covenant* with the said Cornelius Tiebout Williams, that he will, with reasonable diligence, remove off from the said lots the surplus earth and stone above the corporation level ; and *further*, that *he will erect*, or cause to be erected, on or before the first day of May, 1836, on some part or parts of the said lots, *two brick houses*, each not to be less than twenty-five feet front nor less than forty feet in depth, and not less than two stories in height, or in *default in erecting such houses* as above mentioned, the said Isaac Green Pearson *will pay* to the said Cornelius Tiebout Williams, or his executors or administrators, *on demand*, after the first day of May, 1836, the sum of *four thousand dollars*. New-York, June 26, 1834." It was admitted that the houses mentioned in the covenant were not either of them *erected by the first day of May*, 1836, the foundations not having been laid, and that the surplus earth was only partially removed from the lots ; and it was likewise admitted that the plaintiffs demanded on the third day of May in the year one thousand eight hundred and thirty-six, the sum of four thousand dollars mentioned in the covenant, which the defendant refused to pay. The judge decided that the $4000 was to be considered as *liquidated damages ;* to which opinion the defendant excepted, and judgment having passed against him for that sum, he now brings error.

[ *246 ]     *J. Prescott Hall*, for plaintiff in error.

*W. Betts,* for defendants in error.

*By the Court,* BRONSON, J. The defendant, in consideration that the intestate sold him fourteen lots of land for the sum of twenty-one thousand dollars *only,* covenanted to do two things—*first,* to remove from the lots the surplus earth and stone above the corporation level, within a reasonable time ; and *second,* to erect two brick houses upon the lots by a specified day ; or, in default of erecting such houses, to pay the intestate four thousand dollars, when afterwards demanded. So far as this action is concerned, we may lay the first branch of the covenant, which relates to the surplus earth and stone, entirely out of view. It is a distinct stipulation, which cannot affect the remaining branch of the covenant.

The case then comes to this : The defendant, for a specified consideration, agreed that he would erect two brick houses on the lots by a certain day, or in default of doing so, would afterwards pay the intestate four thousand dollars on demand. This was an optional agreement. The defendant had the choice of erecting the houses by the day ; or of omitting to do so, and then paying the specified sum of money. He made his election by omitting to build within the time. The obligation to pay the four thousand dollars, thereupon became absolute ; and the plaintiffs were, I think, entitled to recover that sum, with interest from the time of the demand.

This does not belong to the class of cases in which the question of liquidated damages has usually arisen. It will be found in most, if not all, of those cases, that there was an absolute agreement to do, or not to do, a particular act, followed by a stipulation in relation to the amount of damages in case of a breach ; and in declaring upon the contract, the breach has been well assigned by alleging that the party did, or omitted to do, the particular act. But here, there is no absolute engagement to build the houses. It was optional with the defendant whether he would build them or not ; *and there would have been no sufficient breach, if the plaintiffs [ *247 ] had stopped with alleging that the houses were not built. This is not a covenant to build, with a liquidation of the damages in case of nonperformance ; but it is a covenant to build within a specified time, or afterwards to pay a sum of money. The money is not to be paid by way of damages for not building the houses ; but is to be paid, if the houses are not built, as part of the contract price for the lots conveyed by the intestate.

Again : this is not simply an alternative covenant, to build, or pay a sum of money, within a specified period. If it were so, the question of damages would, perhaps, be open. But it is an agreement to build by a certain day, or *afterwards* pay a sum of money. When the day for building had gone

by, it was then merely a covenant to pay money. It was necessary, in declaring, to allege that the houses were not built—not, however, because that part of the contract was any longer in force—but by way of showing that the event had happened which the defendant agreed to pay the money. It had now become a simple covenant to pay money; and like other cases where there is an agreement to pay a gross sum of money, that sum, with interest from the time it became payable, forms the measure of damages.

Let us reverse the order of these stipulations, and suppose that the defendant had agreed to pay the intestate four thousand dollars by a particular day, or in default of so doing that he would afterwards build the houses. The defendant might then have discharged himself by the payment of the money by the day; or he might, at his election, suffer the day to pass, and then build the houses. If he did neither, the intestate would have an action; but the question of damages would turn wholly on the agreement to build. The enquiry would be, either how much was it worth to build, or how much has the intestate lost by the neglect. The day for paying the four thousand dollars having gone by, that clause of the covenant could have no possible influence upon the question of damages. The recovery might be either more or less than that sum. In short, the intestate *would  [ *248 ] recover damages for not building, whatever those damages might appear to be. So here taking the stipulations in the order in which they stand in the contract, the question of damages turns wholly on the agreement to pay the four thousand dollars in a certain event. The event having happened, the plaintiffs are entitled to that sum, without any reference to the fact that the defendant might at one time have discharged himself by building the houses.

We have no right to call this sum of four thousand dollars a penalty, or say that it was inserted in the contract for the purpose of ensuring the erection of the houses. There is nothing in the covenant which will warrant such an inference. We are to read the covenant as the parties have made it; and then it appears that this sum of four thousand dollars was not inserted for the benefit of the intestate, but as a privilege to the defendant. The intestate had no option, but the defendant had. He was at liberty to discharge himself from the covenant by building the houses, if he deemed that course most for his interest or convenience; or he might elect, as he has done, to omit building and pay the money. So far as we can judge from his acts, he deems that course most beneficial to himself.

Whether the plaintiffs, or the persons whom they represent, will be better off if they get the money, than they would have been had the houses been put up, must, from the nature of the case, be a difficult question to decide; and that is one reason why the parties should be left to settle the matter for themselves, as they have done by the contract. But if we could see clearly,

that the building of the houses would have been of little importance to the plaintiffs, that could not alter the case. *Astley* v. *Weldon*, 2 *Bos. & Pul.* 346. *Daikin* v. *Williams*, 12 *Wendell*, 447.

Although I have said something on that subject, we are not, I think, at liberty to speculate upon the probable consequences of holding parties to their agreements. · So long as they keep within the boundaries of the law, and practice no fraud, our business is to see that their contracts are enforced. We have no dispensing power.

Judgment affirmed.