Mott v. Mott.

———•••———

MOTT, adm'r of O. H. Mott, *vs.* WALTER MOTT.

O. H. M. & W. M., being partners in the practice of medicine, on the 8th of October, 1849, entered into an agreement under seal, by which W. M. granted and sold to O. H. M. the jars, bottles and other furniture belonging to the office, except the stove, at first cost, and the stove for what it was worth, and the medicine in the office for what it should be appraised at, &c. W. M. for and in consideration of the above sale and of the sum of $100 to him paid by O. H. M., bound himself " in the sum of $500 liquidated damages, not to practice medicine in the village of S., or town of S., for five years" from the date of the agreement. O. H. M. agreed to buy the furniture, &c. and to pay the prices specified in the agreement. Another instrument, of the same date, under seal, was executed by the parties, by which O. H. M. sold and conveyed to W. M. the equal undivided one-third part of all the accounts, notes, debts, &c. due to the firm, and W. M. promised to pay to O. H. M. fifty cents on the dollar, on the said one-third of the demands, &c. These instruments, it was alledged, were executed and delivered at the same time, and related to the same subject matter. *Held* that there was a sufficient consideration for the contract, and that such agreement was not against public policy, although in restraint of trade;

the extent of territory, and the length of· time, to which the restraint was limited not being unreasonable.

*Held also*, that for a breach of the covenant by W. M. before the death of O. H. M., an action could be maintained by the personal representative of the latter.

*Held further*, that the sum of $500 specified in the contract as liquidated damages was not a penalty, but that upon a breach of the covenant on the part of W. M. not to practice medicine, that sum was recoverable.

Parties may, by their mutual agreement, settle the amount of damages, uncertain in their nature, in respect to the performance or omission of a particular specified act, at any sum upon which they shall agree.

THIS cause was tried by the court without a jury. Orville H. Mott, the plaintiff's intestate, and Walter Mott, the defendant, were partners in the practice of medicine. On the 8th day of October, 1849, they entered into an ·agreement under seal, by which Walter Mott, for and in consideration of the premises thereinafter mentioned, granted and sold unto the said Orville H. Mott " the jars, bottles and other furniture belonging to the office, except stove, at first cost, and the stove for what it is worth, and the medicine now in the office for what G. R. Berwords or Vandercook shall appraise them, and one Jarvis adjuster at $50." And the said Walter Mott further covenanted as follows : " for and in consideration of the above sale, and for and in consideration of the sum of $100, to him in hand paid by the said Orville," bound himself " in the sum of $500 liquidated damages, not to practice medicine in the village of Schuylerville or town of Saratoga, for five years from this date." And Orville H. Mott, in consideration of the above, agreed to buy the property above mentioned and to pay the prices above specified. Another instrument bearing the same date was executed under seal by the parties, by which Orville H. Mott, for and in consideration of the money to be paid him as thereinafter mentioned, by Walter Mott, bargained and sold, granted and conveyed to the said Walter H. Mott, his executors, administrators and assigns, as follows : " the one equal undivided one-third part of all the accounts, notes, due bills, debts and demands which are owing to us by individuals as partners in the practice of medicine, and the other business appertaining to

the same; and I hereby authorize the said Walter to use all lawful means to collect the same, to and for his own use and benefit, but at his own risk and expense." And Walter H. Mott, for and in consideration of the above, promised to pay the said Orville H. Mott, his heirs and assigns, 50 cents on the dollar on the said one-third of said demands.

The complaint averred that both of these agreements were executed and delivered at the same time, and had reference to the same subject matter. Orville H. Mott died June 27, 1850, until which time he practiced medicine in the town of Saratoga, and it was alledged that he performed said agreements on his part in all things; but that the defendant had practiced medicine in the same place from early in May, 1850, until the death of Orville H., by which he became liable to pay $500.

This suit was commenced before Orville H. Mott's death, and his administrator had been substituted in his place.

The answer denied that the two instruments were executed and delivered at the same time, or related to the same subject matter. On the contrary, it alledged that they were distinct; denied, generally, performance by the intestate, and averred performance by the defendants. It alledged that the first agreement was without consideration; and that whatever the defendant had done in the practice of medicine, was with Orville H. Mott's consent; and that, for a good consideration, before he practiced, Orville H. released the defendant from all liability on the agreement not to practice. The defendant also insisted that the covenants were personal, and did not survive. The plaintiff denied that the defendant had performed, or that the agreement was without consideration, or that the intestate consented that the defendant might practice medicine, &c., or that he released the defendant from his liability on the agreement, and insisted that the covenants survived.

It was proved that the defendant commenced the practice of medicine about the 20th of April, 1850, within the territory mentioned in the agreement, and continued to practice until after this suit was commenced. It appeared that after the agreement Orville H. Mott had invited the defendant to accom-

pany him on his professional visits, in a few very severe cases. One witness testified that he applied to the intestate, in April, 1850, and he thought the latter part, at the defendant's request, to form a partnership with the defendant, which he declined, and said he had as much business as he could do, and did not care how soon the defendant came back; and that he, the witness, communicated this conversation to the defendant. Another witness stated that he told Orville H. Mott that he understood Walter was coming back, and he replied that he had no objections. Another witness swore that the intestate, after the suit was commenced, admitted that the $100 mentioned in the instrument had not been paid. On the part of the plaintiff, a witness testified that in the spring of 1850, and he thought in April, at the defendant's request, he asked the intestate if he would take a certain sum and release him from his obligation not to practice, or go into partnership; both of which the intestate declined. That the defendant was then talking about coming back to Schuylerville. That about the time the defendant came back, the witness advised the defendant to take up or settle the bond, but he said he had no means to do it. Another witness testified that in the spring of 1850, and he thought in April, but it might be the last of March, at the defendant's request, he applied to the intestate for the same purpose, but the latter refused to make any compromise; and that he, the witness, informed the defendant of the result. Another witness stated that in the same spring, and he thought in the last of March or first of April, the defendant told him he had offered O. H. Mott $50 to give up the bond, and offered to leave it to O.'s brother or brothers, and that he had refused; and that he, the defendant, had or should come back. That he thought he had offered all that was fair. Another witness testified that about the last of March or 1st of April, the defendant told him he had offered to go into partnership with O. H. Mott, or remunerate him if he would let him come back, and that he answered him very short, and he thought he was ungenerous. And at the defendant's request, he saw and told him what the defendant said, and he replied, if the defendant came back he should

sue him; which answer he communicated to defendant. That after the suit was pending, and a short time before February term, the defendant said he offered O. H. Mott all that was fair, and he would not accept of it, and he thought it was wrong. Testimony was also given upon the point whether the two contracts were executed and delivered at the same time.

On the testimony being closed on the part of the plaintiff, the defendant moved for a nonsuit, which was refused, and the defendant excepted. The court directed the jury, if they found for the plaintiff, to find a verdict for the sum of $500, subject to future consideration of the court; to which direction the defendant also excepted. The jury found that sum for the plaintiff, and also specially, that the defendant began to practice medicine in the village of Schuylerville, and in the town of Saratoga, on the 20th of April, 1850, and without the consent of the intestate. The defendant moved in arrest of judgment, and also insisted that the plaintiff was not entitled to judgment on the verdict upon the proof, and the cause was reserved for further consideration.

*J. Mott,* and *H. W. Merrill,* for the defendant, made the following points:

I. The cause of action does not survive. II. The obligation not to practice, &c. is without consideration, and void, the $100 were not paid, and the purchase of the articles at their cash value, furnished no consideration to uphold the covenant. III. The consideration, if any, was wholly inadequate. IV. There was not only no consideration, but there was no good reason shown for entering into the contract. V. The two agreements can not be construed together. VI. The $500 should be regarded and held as a penalty.

*J. Lewis* and *A. Bockes,* for the plaintiff. I. The material allegations contained in the complaint are admitted. II. Papers executed at the same time, and relating to the same subject matter, should be construed together. III. The cause of action accrued before the death of the intestate, and the action had been

in fact commenced, and was a cause of action which survived. IV. There was a good consideration to uphold the agreement. Both agreements are to be taken together, and they show a sale of medicines, and the agreement recites a consideration also of $100, as a special consideration. V. A release, to be effectual, should be under seal.

HAND, J. It is contended that by the death of the intestate the cause of action, if any, is extinguished; that it is personal, and does not survive to his representatives. But the covenant was broken before the death of the intestate, and the right of action therefore was not affected by that event. Upon the death of the covenantee, his interest vested in his personal representatives, for the executors or administrators of any person are implied in himself. (*Hurlstone on Bonds,* 115. 3 *Bac. Ab.* 59. *Toller,* 157, 437. *Platt on Cov.* 453, 520. *Chit. on Cont.* 96. *Siboni* v. *Kirkman,* 1 *M. & W.* 418.) In some cases, contracts are for the benefit of the judgment and taste of the party, and are considered personal. (*Siboni* v. *Kirkman, supra. Chit. on Cont.* 634. *Robson* v. *Dunn,* 2 *B. & Ad.* 403.) And notwithstanding the good will of a trade may be the subject of value and price, and may be sold, bequeathed or become assets, (*Tindall, C. J. in Hitchcock* v. *Coker,* 6 *Ad. & El.* 438,) I am not certain that a covenant restricting professional practice, if unbroken before, continued in force after the death of the covenantee; for it is for his reasonable protection. But here that question does not arise; for whatever claim for damages existed at his death, can be recovered by the representative. And the jury by their special verdict have found a breach in the lifetime of the intestate.

I have also come to the conclusion that here is sufficient consideration, and that the contract is not against public policy. The counsel for the defendant rely upon what was said by Mr. J. Bronson in *Chappel* v. *Brockway,* (21 *Wend.* 157,) and *Ross* v. *Sadgbeer,* (*Id.* 166.) In the first of those cases, the parties had been engaged in running packets, and the defendant sold out his interest in the concern for a pecuniary consideration;

and agreed not to run on a certain portion of the canal. The consideration was deemed sufficient, and the reason for entering into the contract good. In *Ross* v. *Sadgbeer*, the agreement was that the obligor would not manufacture pearl ashes, &c. for a fixed period; and although it was not denied that a seal imported a pecuniary consideration, yet no good reason for the bond appeared. *Non constat* that it was not merely hiring a man not to exercise his trade, to his injury, without any benefit to the obligee.

In *Hitchcock* v. *Coker*, (*supra*,) in the exchequer chamber, reversing the decision of the king's bench, it was held that the court would not look into the adequacy of the consideration, but only to see that some consideration appeared on the face of the declaration. That law has not been since disputed in England. (*Archer* v. *Marsh*, 6 *Adol. & El.* 959. *Sainter* v. *Ferguson*, 7 *M. G. & S.* 716.) Of course, there must be a consideration, as in all other contracts, or it would be *nudum pactum* and void.

Here a pecuniary consideration is. expressed, and mere non-payment would not avoid the deed; and beside, there was a sale of the partnership effects. Without the second agreement, perhaps this sale does not appear; but the partnership and transfer of the effects of the firm are averred in the pleadings, and where that is done, those facts, it seems, can be proved. (*Ross* v. *Sadgbeer*, *supra*, Best, C. J. in *Homer* v. *Ashford*, 3 *Bing*. 322.) Certainly, the circumstances in which the parties were placed may be shown, to see whether the contract be reasonable.

In short, there is nothing appearing in or out of the contract, showing an inadequacy of consideration, or that the restraint was unreasonable. No one can say what the good will of the business, if that may be considered as included, was worth; and the sale of the property and the engagement not to practice, were parts of the same contract. And the extent of territory, and the length of time to which the restraint was limited, were not unreasonable, for the protection of the intestate. (*Chappel* v. *Brockway*, *supra*. *Ross* v. *Sadgbeer*, *supra*. *Sainter* v. *Ferguson*, *supra*. *Hitchcock* v. *Coker*, *supra*. *Leighton* v. *Wales*, 3 *M. & W.* 545. *Homer* v. *Graves*, 7 *Bing*. 743.

*Wallace* v. *May,* 11 *M. & W.* 653. 1 *Stor. Eq. Jur.* § 292. *Chit. on Cont.* 576, *Perk. ed. and the cases there cited.*)

Several other objections to a recovery were taken, but none of them requires particular notice.

The rule of damages is the only remaining question. The defendant insists that the sum of $500, specified in the contract as liquidated damages, is a penalty. It is sometimes difficult to apply any general rule to these cases, or to determine when the parties intended to ascertain and fix the amount of damages. It is said, where the same sum is stipulated as recoverable for a breach of every article in the contract, however minute and unimportant, no words will make it a penalty. But the parties may, by their mutual agreement, settle the amount of damages, uncertain in their nature, in respect to the performance or omission of a particular specified act, at any sum upon which they shall agree. (1 *Saund. Rep.* 58, *c. n. d. And see Dakin* v. *Williams,* 17 *Wend.* 447 ; *S. C.* 22 *Id.* 201 ; *Smith* v. *Smith,* 4 *Id.* 468 ; *Boys* v. *Ancell,* 5 *Bing. N. C.* 390. *Kemble* v. *Farren,* 6 *Bing.* 141 ; *Barton* v. *Glover,* 1 *Holt's N. P.* 43, *and note to that case ; Chit. on Cont.* 759 ; *Sedgwick on Dam.* 449.) Under that rule, I think this is not a case of penalty. Indeed, in nearly all cases of this nature, where a certain sum has been agreed upon, as damages for the violation of an agreement restraining a party from the use and exercise of a trade or profession, the courts have considered it as liquidated damages. It has been so held in cases of physicians, surgeons, apothecaries, &c. (*Rawlinson* v. *Clarke,* 14 *M. & W.* 187. *Hitchcock* v. *Coker,* 6 *Ad. & El.* 438. *Sainter* v. *Ferguson,* 7 *M. G. & S.* 716. *Smith* v. *Smith.* 4 *Wend.* 468.) And of attorneys. (*Galsworthy* v. *Scott,* 1 *Wel. Hurl. & Gord.* 659.) And in other cases. (*Green* v. *Price,* 13 *M. & W.* 695. *Duckworth* v. *Allison,* 1 *Id.* 412. *Pearson* v. *Williams,* 24 *Wend.* 244 ; *Dakin* v. *Williams,* 17 *Id.* 447 ; *S. C.* 22 *Id.* 201. *Reilly* v. *Jones,* 1 *Bing.* 302. *Barton* v. *Glover,* 1 *Holt's N. P.* 43. *Crisdee* v. *Bolton,* 3 *C. & P.* 240. *Sedgwick on Dam.* 435, *et seq. Noble* v. *Bates,* 7 *Cowen,* 307.)

If the defendant had practiced at the request of the intestate,

that, so far, perhaps, would not have been a breach, as being occasioned by the covenantee. (*Rawlinson* v. *Clarke*, 14 *M. & W.* 187, *notes to the Amer. edition. And see* 2 *M. & G.* 750.) Though the general rule is that a parol licence can not discharge a covenant, particularly before a breach. It can not be waived or discharged by a parol agreement. (*Cordwent* v. *Hunt*, 8 *Taunt.* 596. *West* v. *Blakenay*, 2 *M. & G.* 729. *Delacroix* v. *Bulkley*, 13 *Wend.* 73. *Chit. on Cont.* 107.) But the jury have found that there was no consent of the intestate.

There must be judgment for the plaintiff.

[SARATOGA SPECIAL TERM, June 2, 1851. *Hand*, Justice.]