BARRY v. HARRIS.*

[IN CHANCERY.]

*Reformation of Written Contract    Choses in Action.
Stipulated Damages.*

In equity, parol evidence is admissible to reform a written contract; but it must be of the strongest and most conclusive character.

In equity, parol evidence is admissible to show mistake in a written contract, as well when the orator seeks affirmative relief on the ground of mistake, as when the defendant sets it up as a defence, or to rebut an equity.

When a contract is referred in chancery, the court will retain the case, and grant such further relief as the party may be entitled to.

*Decided at the February Term, 1876.

The equitable owner of a non-negotiable chose in action, may maintain suit thereon in chancery in his own name.

Orator and C. bought defendant's business as a carrier of freight over certain routes, together with his carrying equipment, upon the understanding that defendant should not re-engage therein; and defendant executed a writing promising, for value received, to pay five hundred dollars on demand if he should so re-engage. *Held*, that the damages were stipulated.

APPEAL from the Court of Chancery.

The bill alleged,

That on September 9, 1868, the defendant was, and for a long time had been, engaged as a carrier of freight between Townshend and Brattleboro, and Townshend and Bellows Falls; that he had secured a large business, and a great number of patrons along said routes; that on or about that day, the orator and one Cook purchased defendant's team, wagon, &c., and the good will of his business; that defendant agreed not to put a team onto either of the said routes for the purpose of hauling freight other than his own; that in consideration thereof, they paid $450, and promised in writing to pay $450 more, which they subsequently also paid; that defendant agreed to execute his conditional note to the orator and said Cook for $500, as the fixed sum in damages agreed upon in case defendant should put a team onto either of said routes for the purpose of freighting thereon; that the parties employed a scrivener to write a note with such condition, and that he wrote a paper that defendant signed, by which he promised, for value received, to pay five hundred dollars, on demand, if he put a team onto the routes named for the purpose of carrying to and from the places named, but reserved the privilege of carrying his own freight; that through the mistake of the scrivener, the names of the orator and Cook were omitted to be mentioned as the payees; and that said paper was received by the orator and Cook as a promissory note, subject to the condition named therein. The bill further alleged, that soon after said purchase, the orator purchased of said Cook all of his interest in said team, and the good will of said business, and became the owner of said note; that at the time of the orator's said purchase, defendant was not engaged in any business that required freighting of his own, except, perhaps, to a small extent in the manufacture of bobbins; that soon after the orator's said purchase, defendant put a team onto the road between Townshend and Brattleboro, apparently for the transportation of bobbins, but really for the transportation of freight, in violation of said agreement; that he did not carry much freight till March, 1872, when he purchased a team, before

that time used by a third party in freighting over one of said routes, and began business again on both of said routes, using therein several teams, and carrying a great amount of freight, some of the time, for the purpose of avoiding his liability to the orator, buying freight at one terminus and selling it at the other; without profit, save what he gained in carrying; and that he refused to recognize said writing as in any way binding on him, or to make any compensation, or to desist from the violation of his agreement. *Prayer*, that defendant be directed to pay said sum of $500, with interest; that he be enjoined from further violation of said agreement; and for general relief.

The answer alleged,

That at the time of the purchase by orator and Cook, there were a large number of teams owned by other carriers on said routes, engaged in the carrying business; that the orator and Cook made said purchase with knowledge thereof, and paid defendant only the value of the carrying equipment; that although it was agreed that defendant should not put another team onto said routes, it was not agreed that he should not purchase and use in said business the teams and other equipments of said other carriers; that the agreement was so explained to the scrivener who made the writing, and that if the writing differed in any particular from the agreement made, it was because of the failure of the scrivener to write it as stated; that no sum was agreed on as a fixed and certain forfeiture, but that the sum of $500 was inserted, as defendant supposed, as the extreme limit; that it was never intended to have the writing in the form of a negotiable promissory note, nor that the names of orator and Cook should be inserted therein as payees, but was intended as a personal agreement between the parties thereto, to continue in force only so long as orator and Cook should continue to do business together; that the orator had never had an assignment of said writing from Cook, and that it formed no part of the consideration in orator's purchase from Cook.

The answer further alleged, that defendant put no team onto either of said routes so long as orator continued in business with Cook; that on or about May 1, 1872, he purchased the teams of one of the other carrying lines, and thereafter carried freight as those from whom he purchased had done; that he had in no way violated said agreement; and that, as the bill had not alleged any assignment of the agreement, nor any notice thereof to defendant, nor any agreement by defendant that said writing might be considered as binding between himself and orator, the contract should

not be reformed ; and that even if it were, the orator would not be entitled to relief. The answer claimed the same advantages as could have been taken by demurrer.

The bill was traversed, and testimony taken. Upon the hearing at the April Term, 1875, defendant moved to suppress the testimony relative to the mistake by which the names of the payees were omitted from said writing ; but the court, WHEELER, Chancellor, overruled the motion, and found that defendant delivered said writing to the orator and Cook as evidence of an agreement that he would not engage in business as a carrier of freight for persons other than himself, and to pay them the penal sum of $500 as an indemnity against any breach of the agreement ; that the orator had in equity succeeded to all the rights of Cook and himself to the agreement and indemnity ; that the defendant had broken the agreement, and that the orator was entitled to compensation as damages for all losses sustained by reason thereof, and ordered a reference to a special master to take an account of the losses sustained by the orator, and enjoined defendant from carrying freight upon either of said routes in violation of said agreement. Appeal by defendant.

*E. L. Waterman* and *C. B. Eddy*, for defendant.

*A. Stoddard*, for orator.

The opinion of the court was delivered by

POWERS, J. The jurisdiction of courts of equity to reform written instruments which through fraud or mistake fail to speak the true agreement of the parties, has long been firmly established. The strict rule of law, that parol evidence shall not be received to contradict or vary written instruments, is not enforced in equity in cases of this kind ; but the court will ascertain the contract that the parties *in fact* made, and this must necessarily, in most cases, rest in parol. But in all such cases, the proof must be of the strongest and most conclusive character. Such is the English and the American rule. *Townshend* v. *Stangroom*, 6 Ves. 334 ; *Preston* v. *Whitcomb*, 17 Vt. 183 ; *Shattuck* v. *Gray*, 45 Vt. 87. But in cases where the party seeking to rectify an instrument also

seeks the specific performance of the instrument as corrected, there is much dispute in the books as to the admissibility of parol proof. The English courts hold that a defendant *resisting* a specific performance, may show by parol a mistake, as a reason why he should not be compelled to perform the contract ; but refuse such evidence when offered by a plaintiff *seeking* specific performance, with a variation of the contract. The leading case on the subject is *Woollam* v. *Hearn*, 7 Ves. 211, where the complainant sought to show. by parol a mistake in the amount of the rent reserved in a memorandum for a lease, and also asked for the specific performance of the contract as corrected; but the evidence was rejected, and the doctrine of that case is the settled law of the English court. 15 Ves. 516 ; 1 Ves. & B. 524 ; 1 Y. & Col. C. C. 559. It is difficult to see any distinction in principle between the case of a party seeking to establish his rights under a falsely written contract by showing the truth, and the case of à defendant securing his rights under such contract by showing the truth by way of defence. In many cases in this country, the English rule has been denied. Chancellor KENT, in a masterly discussion of this subject, and on a thorough review of the English cases, in *Gillespie* v. *Moore*, 2 Johns. Ch. 585, lays down the rule that in equity, parol evidence is admissible to show a mistake in a written contract, as well where the plaintiff seeks relief affirmatively on the ground of mistake, as where the defendant sets it up as a defence or to rebut an equity. This case is approved by Judge STORY, 1 Eq. Jur. s. 161 ; and although not followed. by some of our sister states, it seems to us to express the true rule to be adopted.

The cases all agree that equity will correct mistakes in written instruments. Why correct them, unless the parties may each reap the benefits and be held to the obligations of their contracts when made to speak the truth? and .when corrected, what objection can there be to giving relief in the same case that demands the correction ? Why should remedial justice be meeted out to one party to the contract and denied to the other? We think the parties stand on a level in respect to the remedy, and in respect to the means of securing it.

In the case at bar, there is no question that the contract of September 9, 1868, executed by the defendant, was intended for the benefit of Cook and Barry, and that, by a mere mistake, the names of Cook and Barry as payees were omitted. The case then falls within the rule above stated, and the contract may be made to read as the parties intended it should. The jurisdiction of chancery being rightfully invoked for the purpose of reforming this contract, the court will not stop here, and turn the parties over to a court of law, but will retain the case, and grant such further relief as the party may be entitled to.

Objection is made that this contract as corrected and made payable to Cook and Barry, can only be enforced by them, and not by this orator alone. This question will depend upon the rights that the orator got by his purchase of Cook's interest in the partnership property and effects of Cook and Barry, as set forth in the bill. It is clear on the proof, that all the rights that Cook and Barry had in this freighting business bought of the defendant, passed to the orator by his purchase from Cook. The orator succeeded to the business of the firm of Cook & Barry, and to all the privileges, immunities, and rights of action growing out of or incident to the defendant's sale to that firm; and if the firm had a chose in action against the defendant under this contract, it would, in equity, pass by assignment to the orator, and the orator, taking the delivery of the contract as such assignee, may, in equity, sustain an action thereon in his own name.    2 Story Eq. Jur. ss. 1040 to 1058; *Day* v. *Cummings*, 19 Vt. 496.

What property did Cook and Barry buy of the defendant September 9, 1868 ? The bill states that they bought the defendant's team and whatever appertained thereto, and the good will of his business. The defendant admits the sale of the team, but denies that he obligated himself personally to abstain from doing freighting business over these routes. Contracts having for their object a partial restraint upon the exercise of one's business or calling, if reasonable, are always upheld and enforced by courts. We are fully satisfied in looking at this contract of September 9, 1868, and the other evidence in the case, in the light of the surrounding circumstances, and as applied to the subject-matter involved,

that the parties fully understood that the defendant was to abandon this business over the routes named; that this was the inducement that led Cook and Barry to purchase the defendant's property—they bought him off the road—they got rid of competition. It was not their sole object to become possessed of the defendant's team; but they contracted for an exclusive right to do this business over these routes as against him; and hence, it is no answer to say that the defendant has put no new team onto the routes. The defendant's personal acquaintance with this business and the customs on the line, and his personal influence as affecting this business, were an important element in the consideration of this purchase. It follows that this immunity against competition by the defendant, was a valuable asset in the partnership property of Cook and Barry. It enhanced the value of their business. It was a protection that they enjoyed in virtue of their purchase, and it had such a value as made it a proper subject of legal security and legal vindication. *Hall* v. *Barrows*, 4 De G. J. & S. 150; Adams Eq. 246; 2 Chit. Cont. (11th ed.) 985.

Now when the orator purchased Cook's interest in the partnership property, including this contract, as stated in the bill and established by the proofs, he acquired the same rights under the contract that Cook & Barry had, and, as we have seen, may in equity enforce such rights in his own name.

. This brings us to inquire what rights in respect to relief under the contract the orator has. It is insisted by the defendant, and such seems to have been the view adopted in the court below, that this sum of five hundred dollars mentioned as payable in the contract, is a sum designed to secure only such actual damages as the orator can show; that the case falls within the scope of our statute regulating actions upon penal bonds. Gen. Sts. c. 30, ss. 63, 65.

Our statute is a substantial transcript of the English statute, 8 and 9, William III, c. 11, s. 8. Prior to the statute of William, the only relief that defendants had when sued at law upon penal bonds was, to apply to a court of equity. At law, they were held liable for the full penalty; but in proper cases, equity would give relief upon paying the amount equitably due. To

prevent this circuity of action, this statute was passed, giving the common-law courts the power to ascertain the equitable sum due. But the statute only applies to bonds, contracts, and obligations with penalties, or wherein the sum payable is in essence a penal sum or forfeiture. But it does not reach or apply to the case of stipulated damages, such damages being parcel of the contract of the parties. *Murray* v. *Earl of Stair*, 2 B. & C. 82; *Mercer* v. *Irving*, E. B. & E. 569; 8 T. R. 255; Adams Eq. ( 6th Am. ed. ) 247. The English cases cited below were decided since this statute, and no claim was made that it was applicable. Our statute, most obviously, has the same construction. Whether a fixed sum mentioned in a contract as payable on certain contingencies named, shall be construed as a penalty or as agreed damages, is a question that has led to much discussion and great differences of opinion among judges and commentators. It seems to be conceded on all hands, that if it be clear that the parties have agreed for themselves upon a definite sum as the measure of the damages to be paid for a violation of their contracts, the courts will not undertake to make new contracts for them; and the general rule is, that in doubtful cases, the court will incline to treat the sum as a penalty rather than otherwise. In all cases, the intention of the parties is to be ascertained and effectuated. The form of the instrument will sometimes throw light on the question. The nature of the contract entered into, whether consisting of a single act or of many acts to be done or omitted, the amount of the sum fixed, whether commensurate with the apparent actual injury, are all considerations proper to be weighed in determining the intent of the parties.

Contracts whereby a party agrees not to exercise his vocation for a limited time or in a particular place, under an obligation to pay a stipulated amount, have often, perhaps generally, been held to be contracts conditioned for the payment of liquidated damages rather than penalties. The difficulty of ascertaining the actual damages in such cases has doubtless led to this construction. They have been regarded in many cases as alternative contracts, giving the party the right to pay the sum named if he wishes to do the thing prohibited. The following are well considered cases

of this character : *Green* v. *Price*, 13 M. & W. 695—(affirmed in 16 M. & W. 346) ; *Galsworthy* v. *Strutt*, 1 Exch. 658 : *Atkyns* v. *Kinner*, 4 Exch. 776 ; *Barton* v. *Glover*, 1 Holt, 43 ; *Sainter* v. *Ferguson*, 62 E. C. L. 716 ; *Reynolds* v. *Bridge*, 88 E. C. L. 528 ; *Mercer* v. *Irving*, 96 E. C. L 562 ; *Pierce* v. *Fuller*, 8 Mass. 223 ; *Mott* v. *Mott*, 11 Barb. 127 : *Admr. of Smith* v. *Admr. of Wainwright*, 24 Vt. 97. The court in *Smith* v. *Wainwright*, recognizes the course of decision above referred to; but in that case holds from the language made use of, that the sum fixed was intended as a penalty. It is clear that the defendant has violated his contract and resumed business over these routes. We think in this case that the form of the contract, the practical impossibility of ascertaining the damages consequent upon a violation of the contract, the reasonableness of the sum named, and the object and purposes of the contract, clearly make it a case of stipulated damages.

Some other questions were discussed in the argument, but it is unnecessary to consider them.

The decree of the Court of Chancery is reversed, and cause remanded, with instructions to enter a decree for the orator in accordance with the views herein expressed.