Nott, J.,
delivered the opinion of the court:
It appears by the findings of fact in this case (1) that a board of survey having found adversely to the claimants, they requested that the adjudication of the board be reopened; (2) that the defendants acceded to the request and referred the investigation of the matters in controversy to a second board of survey; (3) that the claimants appeared by counsel and were heard by the board; (4) that the new board reduced materially the amount of the claimants’ liability, but nevertheless reported adversely to them; (5) that at a subsequent day an officer of the Quartermaster’s Department stated an account in which the claimants’ services were credited and their liabilities, as determined by the second board of survey, were debited, and that he- paid to them the balance remaining of the account, they protesting against the reduction, but at the same time giving their receipt in full.
These facts we think preclude the court from adjudicating the primary legal liabilities of the parties, and bring the case within the decisions of the Supreme Court in the cases of Adams (7 Wall., 70), Child, Pratt & Fox (12 id., 232), Justice (14 id., 535), Savage. (92 U. S., 382), and Silliman (101 U. S., 465).
But while we agree with the counsel for the defendants in thinking that the court is precluded by the acts of the claimant from retrying questions of liability which were determined by the board of survey, we likewise think that the decision in this case should not be carried beyond the decisions of the Supreme Court in the cases cited.
The difference between this case and those of Adams and Child, Pratt & Fox is to be found in these facts: In those cases a military commission made a specific reduction from each claimant’s account; each accepted the reduced amount, receipted therefor in full, and then brought his action for the balance withheld. It this case the board of survey merely found the facts and expressly disclaimed an intent to pass upon legal questions of liability which the board evidently thought properly belonged to a court of justice. What the board really determined was (1) that the loss of the defendants’ lumber was caused by the fault of the claimants, (2) that its cost at the place where it was purchased was $1,754.79, and (3) that its *214 transportation from the place of purchase to the place where it was turned over to the claimants was $1,832.15; and there the ' board intended to stop, and thus-far the claimants are concluded from- questioning the justice of its decision. But when the claimants’ account for other services was made out by a quartermaster, he not only charged them with the cost of the lumber and the cost of its transportation, but he also doubled the cost of the lumber and deducted it from the account, apparently upon the ground that a provision to that effect in the contract was intended as liquidated damages, and not by way of penalty. Inasmuch as the claimants duly protested against the reduction, and inasmuch as the defendants’ right to make it depended not upon the findings of the board of survey, but upon the proper construction to be given to an express contract, we’ think the receipt does not preclude the court from passing upon this question of legal liability. (Bostwiclc’s Case, 94 U. S., 53.)
■ The contract which is the foundation of this action provides that “in all cases where the full amount of stores, supplies, or stock is not delivered in accordance with the bill of lading, twice the cost price of the stores, supplies, or stoch deficient, together with the actual cost of transportation of same from place of purchase to the point where they were turned over to the said Davis & Davidson, shall be charged to said Davis & Davidson, it being understood that such charges only apply to the deficiency attributable to the fault of- said Davis & Davidson in the amount of stores, supplies, or stock delivered, and not to any damage of stores, supplies, or stock actually delivered at their destination, the assessment of such damage to be made by a board of survey, as above provided for in this article.”
The claimants, who were these transportation contractors, had a barge burnt while aground, probably by Indians, on which was certain lumber of the government; and the question which the contract now presents is whether the provision that twice the cost price of the lumber should be charged to the contractors shall be construed as of the nature of penalty or liquidated damages.
It is to be noted on the one hand that the defendants’ property confided to the claimants- was to be carried into the wilderness of the Upper Missouri, Yellowstone, and Big Horn, and that from the beginning of the route to the end there were *215 no markets into which they could go to replace their lost stores and supplies, or in which such supplies would have a fair market value; and, on the other hand, that the provision quoted is not confined to stores-and supplies wantonly withheld or wrongfully converted or lost through the claimants’ gross negligence, but is made expressly applicable to “all eases where the full amount of stores, supplies, or stock is not delivered,” or, in other words, to all the incidental and accidental losses which in a greater or less degree attach do and attend the business of the common carrier and transportation agent, and for the loss of which the-law attributes to him fault, and ordinarily holds him responsible.
It is likewise to be noted that this contract, unlike most of those in the reports, does not name a specific “sum in gross” as penalty or liquidated damages, but, on the contrary, uses merely the words “ twice the cost price of the stores.” Here the thing to be recovered is both uncertain in amount and blended with something which the defendants were certainly entitled to recover as damages, viz, the cost price of the stores. Nevertheless we apprehend that no form of contract will preclude a court from looking at the real nature of the agreement. If the contract could designate “twice” the cost price of the supplies, it could likewise designate ten times the cost price; and the question in all such cases sooner or later must be met, whether an .excessive amount designated in any way in a contract is to be taken as penalty or liquidated damages.
Concerning the law applicable to such cases we remark:
1. In determining whether an amount named in a contract is to be taken as penalty or liquidated damages, courts are influenced largely by the reasonableness of the transaction, and are not restrained by the form of the agreement nor by the terms used by the parties, nor even by their manifest intent. Where the contract has expressly designated the amount named as liquidated damages, courts have held that it was a penalty; and, conversely, where the contract has called it a penalty it has been held to be liquidated damages; and again, where the parties have manifestly supposed and intended that an exorbitant and unconscionable amount should be forfeited, the courts have carried out the intent only so far as it was right and reasonable.
2. "Where a party to a contract has an option, in effect, *216 whether he will do or not do a particular thing, or where the subject-matter of the agreement is of such a nature that damages could not well be proved or estimated, and the amount named seems a reasonable approximation to the damages which the other party might actually suffer from the non-performance, it will be held that the amount named shall be taken as liquidated damages. But where there is an absolute agreement to do a particular act, followed by a stipulation as to damages in case of a breach, and the nature of the transaction is such that there can be no inherent difficulty in ascertaining the actual damages, and the amount named in the contract is so excessive that it will not only make the other party whole, but form an exorbitant and unconscionable recovery, it will be held that the amount named should be regarded as a penalty. Thus in Pearson v. Williams (24 Wend., 244; 26 id., 630) the plaintiff had sold to the defendants city lots the price whereof was $21,000, and the defendant had agreed to erect thereon certain designated houses within two years or forfeit to the plaintiff $4,000, and it was held that the amount named was liquidated damages. But if instead of $4,000 the same contract, employing precisely the same language, had named $42,000 as the amount to be forfeited for the non-erection of houses on lots worth $21,000, it is certain that the same courts would have held the amount named to be a penalty and not liquidated damages.
Now, what are the circumstances and conditions of the case before us? If the contract were silent, the damages for property lost through the fault of the carriers would be its value; that is to say, the amount for which it could be replaced. But here the service was to be performed through a region where the property could not be replaced nor its value ascertained. The contracting parties therefore provided that, instead of value, cost should be the primary criterion, and that the cost should be ascertained by taking the actual cost of the article wherever purchased by the government, and adding thereto the cost of its transportation to the place of shipment, i. e., the place where it was turned over to the claimants. So far as the evidence discloses, these elements made all of the government’s actual damages; if they had been paid to the government the morning after the disaster, the payment, so far as can be perceived, would have made the government *217 whole. If, however, the contract had provided that to cover contingencies a reasonable percentage on the cost of the lost articles should be added, the percentage would undoubtedly be regarded as liquidated damages. But when we find that the amount added to the actual damages is one hundred per cent, of the cost of the article, and that the service was one in which such losses are, in a greater or less degree, almost inevitable, and that the circumstances attending the service moreover made it a novel and perilous undertaking, we are constrained to say that “ twice the cost price” of the lost article would give to the government exorbitant and excessive damages, and that the provision should be regarded as in the nature of a penalty.
The judgment of the court is that the claimants recover of the defendants the sum of $1,754.79.