J. ROSWELL HASBROUCK, Appellant, *v.* HOWARD E. VAN WINKLE and MARGARET J. VAN WINKLE, Respondents.

Third Department, April 30, 1941.

*Andrew J. Cook* [*Francis T. Murray* of counsel], for the appellant.

*Fowler & Fowler* [*Joseph M. Fowler* of counsel], for the respondents.

HEFFERNAN, J. This action was brought to foreclose a mortgage to secure the payment of the sum of $1,000.

Respondents, husband and wife, and appellant are the owners of adjoining farm lands in Ulster county, N. Y. In the summer of 1925 respondents were desirous of purchasing a parcel of appellant's lands consisting of ten and eight-tenths acres. Apparently appellant, who was then engaged in practicing his profession of dentistry in New York city, was reluctant to sell. It is not disputed that respondents importuned him to convey the property to them on the plea that they wished to erect a house thereon. As a result of respondents' earnest solicitations appellant finally agreed to sell.

There was some discussion about the purchase price and there is a dispute in the testimony on that subject. Appellant placed a valuation on the property of $1,600. Respondents were either unwilling or unable to pay that sum and suggested that the purchase price be fixed at $600. Ultimately an agreement was reached by the terms of which appellant was to convey the premises to respondents for the sum of $1,600 on condition, however, that the purchase price should be only $600 in the event that respondents within ten years after transfer of title should erect a house thereon at a cost of not less than $7,000.

The evidence discloses that appellant believed that the remainder of his farm, consisting of about one hundred and four acres, would be considerably enhanced in value for residential purposes by the erection of a $7,000 structure on the parcel which respondents sought to acquire. It is also quite significant that at the time respondents were negotiating for this property they had no home of their own but lived with the husband's mother.

On December 15, 1925, appellant delivered to respondents a deed of the property and received in return from them a check for the amount due less a credit of sixty dollars to which they were entitled. At the same time respondents executed and delivered to appellant a mortgage on the premises conveyed to them. In this mortgage respondents acknowledged that they were indebted to appellant " in the sum of one thousand dollars payable ten years from date without interest." The mortgage also recited that it was given as an inducement for the conveyance of the

premises and as security for the erection and construction of a dwelling house and that it was to be null and void in the event that respondents erected on the property within ten years a dwelling house at a cost of not less than $7,000. The mortgage also provided that if respondents neglected " to erect and construct said dwelling within the time specified and at the cost herein specified then and in that event the said mortgage shall be in full force and effect and there shall be due thereunder the sum of one thousand dollars without interest."

Respondents breached their contract by failing to erect a dwelling house on the premises within the time specified and also defaulted in the payment of the mortgage and thereupon this action was brought for the foreclosure of that instrument.

The answer contains two defenses; the first being to the effect that appellant waived compliance with the provisions of the mortgage calling for the erection of a building and that he is, therefore, estopped from claiming a breach. In the second defense it is asserted that the mortgage is null and void in that it provides for a penalty.

After a trial before the court without a jury judgment was rendered in respondents' favor dismissing the complaint. That judgment is the subject of this review.

Upon conflicting evidence the trial court found that at the time of sale the land in question was worth $600. It also sustained the defenses of waiver and estoppel and concluded that the sum stipulated in the mortgage constituted a penalty.

After a careful review of the evidence we cannot escape the conclusion that the record is utterly devoid of any credible evidence to establish the defenses of waiver or estoppel. That leaves for consideration only the question of the validity of the mortgage.

We are unable to adopt the view of the trial judge that the instrument sued upon provides for a penalty and that such was the intention of the parties.

Whether a provision for the payment of a sum of money by one party to the other, in a contract for the sale or purchase of land, is, in the event of default to be construed as a penalty or as liquidated damages has given rise to a great variety of judicial utterances. It has been said that if there is any branch of the law inveighed against for uncertainty deserving of such a reproach, it is this subject of the distinction between penalties and liquidated damages. (*Williams* v. *Green*, 14 Ark. 315.) And no branch can be more truthfully said to be involved in obscurity by contradictory decisions. (*Gobble* v. *Linder*, 76 Ill. 157.)

In our opinion this case does not present that problem for decision. The stipulation as to the indebtedness named in the mortgage does not provide for either liquidated damages or a penalty and hence there is no call upon the court to do equity by relieving a party in default from an unconscionable covenant.

The sum of money referred to in the mortgage and acknowledged by respondents as their indebtedness to appellant is not liquidated damages; still less is it a penalty. It is the sum to be paid in case respondents broke their contract by omitting to do what they had agreed to do. It is the price fixed for what the contract permitted them to omit if they paid.

Concededly appellant had no desire to sell any part of his property. He repeatedly refused to do so but finally yielded to respondents' entreaties. Concededly respondents were not obliged to purchase the property on the terms proposed by appellant or upon any other terms. They were under no compulsion, no duress. The inference is plain that they dissembled their intentions with respect to the use which they would make of the property. It is important to remember that the contract we are construing is one in the alternative, to do one of two things. We are fully cognizant of the principle that a contract which is alternative in form cannot be used as a cloak for the enforcement of a penalty. Under the provisions of the mortgage respondents could have discharged their obligation either by building a residence on the property or by the payment of $1,000 as additional consideration for the land. The contract gave them a genuine choice to build or to pay. The express covenant imported the further agreement that if they omitted to build they would pay the price. The stipulation is in the alternative; that is, the performance of one covenant was in fact a substitute for the other. We are not to construe equities into this contract but to carry it out as the parties were content to make it. It would be an offense against common sense and common honesty to hold that they may now evade their agreement to erect a dwelling and escape the payment of the price of the broken contract on the plea that it constitutes a penalty.

Where the agreement of the promisor is to do a certain thing or in default thereof to pay a certain sum of money, our courts, on his failure to do the particular thing, consider him as having had his election, and hold him liable to pay the agreed sum of money. This form of contract, while approaching very near to a stipulation for a penalty for non-performance, is distinguishable therefrom and enforced according to its terms, and is considered as giving the promisor the election to refuse to do the act and in lieu thereof to pay the amount agreed. (*Pearson* v. *Williams'*

*Administrators*, 24 Wend. 244; affd., 26 id. 630; *Slosson v. Beadle*, 7 Johns. 72; *Esmond v. Van Benschoten*, 12 Barb. 366; *Kemp v. Knickerbocker Ice Co.*, 51 How. Pr. 31; *Bagley v. Peddie*, 16 N. Y. 469; *Smith v. Bergengren*, 153 Mass. 236; 26 N. E. 690; *Stevens v. Los Angeles Dock & Terminal Co.*, 20 Cal. App. 743; 130 P. 197; *State ex rel. Southern Colonization Co. v. Circuit Court of St. Croix County*, 187 Wis. 1; 203 N. W. 923; 1 Clark's New York Law of Damages, §§ 31, 166; Williston on Contracts [Rev. ed.], vol. 3, § 781; vol. 5, § 1407; 17 C. J. 954, § 251; 15 Am. Jur. Damages, § 254.)

In *Pearson v. Williams' Administrators* (*supra*), the leading case on the subject in this State and decided more than a century ago, the facts are strikingly similar to those in the case before us. In that case defendant agreed to build two brick houses by a specified date on lands conveyed to him by plaintiffs' intestate or in default thereof to pay plaintiffs the sum of $4,000. Defendant defaulted and suit was instituted by plaintiffs to recover that amount. The court held that defendant had an option to discharge his obligation by building the houses or by omitting to build and paying the money, and that the agreement was enforcible according to its terms. BRONSON, J., speaking for the Supreme Court said:

" The defendant, for a specified consideration, agreed that he would erect two brick houses on the lots by a certain day, or in default of doing so, would afterwards pay the intestate four thousand dollars on demand. This was an optional agreement. The defendant had the choice of erecting the houses by the day; or of omitting to do so, and then paying the specified sum of money. He made his election by omitting to build within the time. The obligation to pay the four thousand dollars thereupon became absolute; and the plaintiffs were, I think, entitled to recover that sum, with interest from the time of the demand. * * * The money is not to be paid by way of damages for not building the houses; but is to be paid, if the houses are not built, as part of the contract price for the lots conveyed by the intestate. * * *

" We have no right to call this sum of four thousand dollars a penalty, or say that it was inserted in the contract for the purpose of insuring the erection of the houses. There is nothing in the covenant which will warrant such an inference. We are to read the covenant as the parties have made it; and then it appears that this sum of four thousand dollars was not inserted for the benefit of the intestate, but as a privilege to the defendant. The intestate had no option, but the defendant had. He was at liberty to discharge himself from the covenant by building the houses, if he deemed that course most for his interest or convenience; or he might elect, as he has done, to omit building and pay the money. * * *.

" Whether the plaintiffs, or the persons whom they represent, will be better off if they get the money than they would have been had the houses been put up, must, from the nature of the case, be a difficult question to decide; and that is one reason why the parties should be left to settle the matter for themselves, as they have done by the contract. But if we could see clearly that the building of the houses would have been of little importance to the plaintiffs, that could not alter the case."

So far as our research discloses, the rule announced in that case has never been questioned. In fact it was cited with approval as was likewise the case of *Smith* v. *Bergengren* (*supra*) by the Court of Appeals as late as 1925 in *O'Connor* v. *Collins* (239 N. Y. 457, 461).

As was observed by Mr. Justice HOLMES, speaking for the Massachusetts Supreme Judicial Court in *Smith* v. *Bergengren* (*supra*) this case falls within the language of Lord MANSFIELD in *Lowe* v. *Peers* (4 Burr. 2225, 2229) that if there is a covenant not to plough, with a penalty in a lease, a court of equity will relieve against the penalty; " but if it is worded ' to pay five pounds an acre for every acre ploughed up,' there is no alternative, no room for any relief against it, no compensation; it is the substance of the agreement."

In *Esmond* v. *Van Benschoten* (*supra*), in discussing the subject of damages, the court said (p. 371): " Much of the embarrassment experienced in the discussion of questions of this kind, arises from not discriminating properly between contracts having a similitude to each other, but which are materially different. *First.* The agreement may be to do or refrain from doing some particular act, or in default thereof to pay a given sum of money. This agreement was well known to the civil law. (Inst. lib. 3, tit. 16, § 7.) This is not a penal, but more properly, an alternative obligation. The case of *Slosson* v. *Beadle* (7 Johns. 72) and *Pearson* v. *Williams* (24 Wend. 244) are examples of this contract."

In *Bagley* v. *Peddie* (*supra*) the court, in considering the effect of alternative agreements, said (p. 471): " When the agreement is in the alternative to do an act or pay a given sum of money, the court will hold the party failing to have had his election, and compel him to pay the money."

There is neither justice nor equity in the contention of respondents. The judgment in their favor does violence to the fundamental principles of equity. It relieves them of the burdens of their agreement but yet permits them to enjoy its benefits. It should be reversed, with costs, and judgment directed in favor of appellant for the relief demanded in the complaint with costs.

HILL, P. J., CRAPSER and FOSTER, JJ., concur.

SCHENCK, J., dissents: I dissent and vote to affirm on the ground that the alleged contract provided for a penalty. Furthermore, the plaintiff has failed to show any damage by reason of the failure of defendants to build a house on the property.

Judgment reversed on the law and facts, with costs, and judgment of foreclosure and sale is hereby directed in favor of plaintiff, with costs, and the matter is remitted to the Special Term for the appointment of a referee to sell the property and to fix the extra allowance, if any, to which plaintiff may be entitled.

The court hereby reverses findings of fact Nos. 4, 8, 10, 12, 13, 14, 15, 16, 17, 18 and 19 contained in the decision of the court below.

The court also annuls and disapproves of conclusions of law Nos. 1–12, inclusive, contained in such decision.

The court finds the proposed findings of fact submitted by plaintiff to the court below numbered 1, 2, 3, 10, 11, 13, 14, 16, 17 and 18.

The court also makes the conclusions of law numbered 1, 2 and 3 contained in plaintiff's proposed decision submitted to the court below.